IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSON DIVISION

| | | |
|---|---|---|
| TAWANDA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 3:16-cv-00632-MMH-MCR |
| | ) | |
| v. | ) | Judge Howard |
| | ) | Magistrate Judge Richardson |
| CRITICAL RESOLUTION | ) | |
| MEDIATION LLC, | ) | |
| and BRIAN MCKENZIE, | ) | |
| | ) | |
| Defendants. | ) | |

### SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the plaintiff, TAWANDA JOHNSON, by and through her attorneys, THOMAS GIBBONS, ATTORNEY AT LAW, and for her Second Amended Complaint against the defendants, CRITICAL RESOLUTION MEDIATION LLC, and BRIAN MCKENZIE, the Plaintiff states as follows:

#### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

#### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

#### III.   PARTIES

4. TAWANDA JOHNSON, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Jacksonville, County of Duval, State of Florida.

5. CRITICAL RESOLUTION MEDIATION LLC, (hereinafter, "CRM") is a business entity engaged in the collection of debt within the State of Florida. CRM's principal place of business is located in the State of Georgia. CRM is registered as a limited liability company in the State of Georgia.

6. BRIAN MCKENZIE, (hereinafter "McKenzie") is an individual who, upon information and belief, was at all relevant times residing in the State of Georgia.

### IV.    ALLEGATIONS

**COUNT I: TAWANDA JOHNSON v. CRITICAL RESOLUTION MEDIATION LLC**

7. CRM is a business entity whose principle purpose is the collection of debts allegedly owed to third parties.

8. CRM regularly collects, or attempts to collect, debts allegedly owed to third parties.

9. During the course of its efforts to collect debts allegedly owed to third parties, CRM sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

10. CRM was attempting to collect from Plaintiff a debt that was incurred for the personal use of Plaintiff and/or used for household expenditure (hereinafter, "the Debt").

11. At all relevant times, CRM acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

12. At all relevant times, CRM acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

13. Starting in or December 2015, and on multiple occasions thereafter, Plaintiff has received multiple telephone calls from CRM in an attempt to collect the Debt.

14. When Plaintiff answered the telephone calls from CRM, a pre-recorded message was played announcing Plaintiff's name and informing Plaintiff that CRM has a file in its office that required immediate attention and that a failure to respond could result in punishment or fines. The pre-recorded message instructed Plaintiff to press the number one (1) to speak with an agent or CRM.

15. Plaintiff did as instructed and was connected to a duly authorized representative of CRM.

16. When Plaintiff was connected a representative of CRM, Plaintiff asked CRM the nature and purpose of its call to her.

17. CRM responded by informing Plaintiff that it would not provide any information to Plaintiff until Plaintiff provided CRM with her social security number.

18. Plaintiff informed CRM that without knowing who CRM was and the purpose of CRM's call, she was disinclined to provide CRM with her social security number. Plaintiff further informed CRM that she was prepared to offer to CRM other means of identification so she could verify her identity and therefore ascertain the nature of CRM's call; CRM refused.

19. CRM persisted in its attempts to collect the Debt from Plaintiff and continued to make multiple telephone calls to Plaintiff in an attempt to collect the Debt.

20. In response, Plaintiff initiated a telephone call to CRM and spoke with one of its duly authorized representatives. Plaintiff identified herself and asked CRM to stop calling her. Plaintiff asked CRM: "isn't against the law to keep calling me and harassing me." In response, CRM stated: "no, the crime is you not paying back your debts."

21. CRM's representation had the effect of conveying to unsophisticated consumer that she had committed a crime.

22. CRM's representation was false, deceptive and misleading as the failure to pay one's debts is not a crime.

23. CRM's representation misrepresented the character, amount, and/or legal status of the Debt.

24. During the course of one of its telephone calls, to Plaintiff, Plaintiff asked CRM why it was calling and the purpose of the call; CRM responded, "you know what this is about" and when Plaintiff requested that CRM stop calling her, CRM responded: "I will stop calling you – I will see you soon at *********** (i.e., Plaintiff's residential address)".

25. CRM's representation, as aforementioned, had the effect of conveying to an unsophisticated consumer that CRM was coming to her home in a further attempt to collect the Debt.

26. CRM had no intention of going to Plaintiff's home.

27. CRM's representation, as aforementioned, had the effect of conveying to an unsophisticated consumer that CRM was coming to her home in a further attempt to collect the Debt.

28. CRM's statements as delineated above are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of CRM.

29. The natural consequence of CRM's statements was to produce an unpleasant and/or hostile situation between CRM and Plaintiff.

30. The natural consequence of CRM's statements was to cause Plaintiff mental distress.

31. The repetitive calls made by CRM to Plaintiff were disturbing, harassing, and had the effect of making Plaintiff feel concerned and suspicious about answering the telephone.

32. During the course of its telephone calls with Plaintiff, CRM failed to advise Plaintiff that it was a debt collector, that it was attempting to collect a debt and that any information obtained would be used for that purpose.

33. At no time during the course of the aforementioned telephone calls to Plaintiff did CRM provide information relative to the individual caller's identity.

34. In its attempts to collect the debt allegedly owed by Plaintiff, CRM violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   b. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

   c. Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

   d. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   e. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

   f. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   g. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

   h. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

35. As a result of CRM's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, TAWANDA JOHNSON, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against CRITICAL RESOLUTION MEDIATION LLC, as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs; and,

    d.    Any other relief deemed appropriate by this Honorable Court.

### COUNT II:
### TAWANDA JOHNSON v. BRIAN MCKENZIE

36. Upon information and belief, at all relevant times, McKenzie was acting as an Owner, Officer, Director, Manager and/or agent of CRM.

37. Upon information and belief, at all relevant times, McKenzie was the Operations Manager.

38. Upon information and belief, at all relevant times, McKenzie was vested with the responsibility to manage CRM.

39. Upon information and belief, at all relevant times, McKenzie was responsible for the management and/or affairs of CRM.

40. Upon information and belief, at all relevant times, McKenzie was responsible for the day to day operations of CRM.

41. Upon information and belief, at all relevant times, McKenzie was responsible for the supervision of CRM's employees, agents and/or representatives that were attempting to collect debts.

42. Upon information and belief, at all relevant times, McKenzie was responsible for the management of CRM's employees, agents and/or representatives that were attempting to collect debts.

43. The principle responsibility of McKenzie's employment with CRM is directed to the collection of debts allegedly owed to third-parties.

44. During the course of his efforts to collect debts allegedly owed to third parties, McKenzie, both directly and indirectly through his subordinates and agents, sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

45. McKenzie was attempting to collect from Plaintiff a debt that was incurred for the personal use of Plaintiff and/or used for household expenditure.

46. At all relevant times, McKenzie acted as a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

47. Upon information and belief, at all relevant times, McKenzie was responsible for putting in place the policies and procedures and methods by which the employees of CRM were to attempt to collect debts from consumers such as Plaintiff.

48. Upon information and belief, at all relevant times, McKenzie was responsible for training the employees of CRM to engage in the specific conduct as alleged against CRM in the present action.

49. Upon information and belief, McKenzie was the individual responsible at CRM for putting in place a pre-recorded message that served to inform consumers, including Plaintiff,

that CRM had a file in its office that required immediate attention and that a failure to respond to could result in punishment or fines.

50. Upon information and belief, McKenzie trained CRM employees to threaten consumers who did not voluntarily pay CRM that the failure to pay a debt could subject the consumer to criminal penalties, and pursuant to said training, a CRM representative did in fact make such threats to Plaintiff.

51. Upon information and belief, McKenzie trained CRM employees to threaten consumers who did not voluntarily pay CRM that the failure to pay a debt would result in a CRM employee coming to the consumer's house and pursuant to said training, a CRM representative did in fact make such threats to Plaintiff.

52. The aforementioned statements had the effect of conveying to an unsophisticated consumer such as Plaintiff that the failure to pay the Debt could result in criminal prosecution.

53. The aforementioned statements had the effect of conveying to an unsophisticated consumer such as Plaintiff that the failure to pay the Debt could result in a lawsuit being filed against Plaintiff to recover the Debt.

54. The aforementioned statements were false, deceptive and misleading as the failure to the Debt would not result in criminal prosecution.

55. The aforementioned statements were false, deceptive and misleading as the failure to the Debt would not result in a CRM employee going to Plaintiff's house.

56. The aforementioned statements misrepresented the character, amount or status of the Debt.

57. The statements as delineated above are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of CRM and McKenzie.

58. The natural consequence of the aforementioned statements was to produce an unpleasant and/or hostile situation with Plaintiff.

59. The natural consequence of the aforementioned statements was to cause Plaintiff mental distress.

60. The repetitive calls made at the direction of McKenzie by CRM to Plaintiff were disturbing, harassing, and had the effect of making Plaintiff feel concerned and suspicious about answering the telephone.

61. In his attempts to collect the debt allegedly owed by Plaintiff, McKenzie violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   b. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   c. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

   d. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   e. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

   f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

62. As a result of McKenzie's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, TAWANDA JOHNSON, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, BRIAN MCKENZIE, as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs; and,

    d.    Any other relief deemed appropriate by this Honorable Court.

### V.    JURY DEMAND

63.    Plaintiff hereby demands a trial by jury on all issues so triable.

        Respectfully submitted,
        **TAWANDA JOHNSON**

By:   *s/Thomas Gibbons*
       Thomas Gibbons
       Attorney for Plaintiff

Dated: June 8. 2016

Thomas Gibbons  (490334)
Thomas Gibbons, Attorney at Law
9723 Tavernier Drive
Boca Raton, FL 33496
Direct Dial:   (561) 997-4768
Facsimile:   (888) 418-1277
E-Mail:   thomasjgibbons@gmail.com