UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAWANDA JOHNSON,

    Plaintiff,

v.                                         CASE NO. 3:16-cv-632-J-34MCR

CRITICAL RESOLUTION MEDIATION
LLC and BRIAN MCKENZIE,

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the Motion for Entry of Default Judgment (the "Motion") (Doc. 15). The Motion seeks a default judgment against Defendants Critical Resolution Mediation LLC ("CRM") and Brian McKenzie. (*Id.*) For the reasons stated herein, the undersigned respectfully recommends that the Motion be **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

On May 23, 2016, Plaintiff filed her Complaint against Defendants. (Doc. 1.) The Court struck the Complaint as a "shotgun pleading" and granted Plaintiff

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion] a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was not made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

leave to cure the pleading. (Doc. 4.) On June 8, 2016, Plaintiff filed her Amended Complaint in an attempt to cure the deficiencies in the Complaint. (Doc. 5.) On June 13, 2016, the Court struck the Amended Complaint and scheduled a telephonic hearing to occur on June 21, 2016. (Doc. 6.) On July 8, 2016, Plaintiff filed her Second Amended Complaint. (Doc. 8.)

No response was filed by Defendants subsequent to service of process and, on August 11, 2016, Plaintiff filed a motion for entry of Clerk's defaults against Defendants. (Doc. 12.) The Clerk entered defaults against Defendants on August 12, 2016. (Docs. 13, 14.)

On October 27, 2016, Plaintiff filed the instant Motion, seeking a default judgment against Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA") and seeking actual damages in the amount of $2,000.00, statutory damages in the amount of $1,000.00, and attorneys' fees and costs in the amount of $5,104.00, for a total amount of $8,104.00. (Doc. 15) On November 22, 2016, the Court entered an Order taking the Motion under advisement and directing Plaintiff to file the affidavit necessary to obtain default judgment against Defendant Brian McKenzie on or before December 6, 2016. (Doc. 16.) Plaintiff complied with the Court's Order on November 29, 2016, thereby making the Motion ripe for review. (Doc. 17.)

## II.     STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step

process for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant.  *See* Fed. R. Civ. P. 55(a).  Second, after receiving the clerk's default, the plaintiff must apply to the court for a default judgment, except in limited circumstances when application may be made to the clerk.  *See* Fed. R. Civ. P. 55(b).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue."  *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

All well-pleaded allegations of fact are deemed admitted upon entry of a default, but before entering a default judgment, the court must ensure that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).  A sufficient basis must exist in the pleadings for the judgment entered.  *See Nishimatsu*, 515 F.2d at 1206.  A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *See id.*; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment").

Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief. *See* Fed. R. Civ. P. 8(a). A complaint meets the requirements of Rule 8, if in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Further, "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam).

> Subject matter jurisdiction in a federal court may be based upon federal question jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Diversity jurisdiction exists where the plaintiffs and defendants are citizens of different states, and the amount in controversy exceeds $75,000. . . . Absent diversity of citizenship, a plaintiff must present a substantial federal question in order to invoke the district court's jurisdiction.

*Walker v. Sun Trust Bank of Thomasville, GA*, 363 F. App'x 11, 15 (11th Cir. 2010) (per curiam) (internal quotation marks omitted).

The Court must also ensure that the defaulting defendants were properly

4

served.  "It is axiomatic that absent good service, the Court has no in personam or personal jurisdiction over a defendant."  *Tacoronte v. Tate & Kirlin Assocs.*, No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, at *4 (M.D. Fla. Nov. 8, 2013) (internal citations omitted).  "Without personal service of process in accordance with applicable law, a federal court is without jurisdiction to render a personal judgment against a defendant."  *Id.* (citing *Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc.*, 240 F.2d 814, 816 (5th Cir. 1957)).

Here, the Second Amended Complaint was properly served and the Clerk's entry of default against Defendants was proper.  The docket reflects that Brian McKenzie was served by a licensed process server on July 14, 2016 via personal service.  (Doc. 10); *see also* Fed. R. Civ. P. 4(e)(2)(A) (providing that an individual may be served in a judicial district of the United States by delivering a copy of the summons and of the complaint to the individual personally).  The docket also reflects that CRM was served by a licensed process server on July 14, 2016 via an agent authorized by law to receive service.  (Doc. 11); *see also* Fed. R. Civ. P. 4(h)(1)(B) (providing that a corporation, partnership, or association may be served in the United States by delivering a copy of the summons and complaint to an agent authorized by law to receive service of process).

Finally, when a plaintiff seeks the entry of a default judgment against an individual defendant, the plaintiff must also comply with § 521 of the Servicemembers Civil Relief Act ("SCRA"), which requires, *inter alia*, the filing of

5

an affidavit by the plaintiff:

> (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or
> (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. App'x § 521(b)(1).

Here, Plaintiff submitted an Affidavit indicating that Plaintiff's counsel (through a paralegal) searched the Department of Defense website based on Brian McKenzie's name and date of birth, which did not list him in any active duty. (Docs 17, 17-1.) The Affidavit satisfies the requirements of § 521 of the SCRA.

## III. DISCUSSION

### A. Jurisdiction

#### i. Subject Matter Jurisdiction

A district court has subject matter jurisdiction over a federal claim. 28 U.S.C. § 1331. Here, the Court has subject matter jurisdiction over Plaintiff's FDCPA claims because they are federal claims. *See* 15 U.S.C. §1692k(d).

#### ii. Personal Jurisdiction

For a federal court to have personal jurisdiction over a nonresident defendant, the forum state's long-arm statute must reach the defendant and the defendant must have sufficient contacts with the forum state such that the exercise of jurisdiction would not offend due process. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

6

### a. Long-Arm Statute

To determine whether Florida's long-arm statute reaches a nonresident, a federal court in Florida must construe the statute in accordance with Florida law. *Id.* at 1352. The Florida long-arm statute provides both general jurisdiction (jurisdiction if the nonresident defendant engages in substantial and not isolated activity in Florida regardless of whether the claim arose in Florida) and specific jurisdiction (jurisdiction if the nonresident defendant's action upon which the claim is based occurred in Florida). *Id.*

Florida's long-arm statute establishes specific personal jurisdiction over a nonresident defendant who commits a tortious act in Florida.[2] Fla. Stat. § 48.193(1)(a)(2). Specific jurisdiction can be established under this provision by making telephonic communications into Florida, provided that the tort arises from such communications. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). A violation of a statute prohibiting unfair debt collection is a breach of a duty imposed by law and therefore a tortious act. *See Vlach v. Yaple*, 670 F. Supp. 2d 644, 648 (N.D. Ohio 2009). Because Plaintiff's claims arise from Defendants' unfair debt collection calls to telephones in Florida, the Court has specific jurisdiction over Defendants under Florida's long-arm statute's "tortious act"

---

[2] Plaintiff did not allege or establish facts that would support general jurisdiction over Defendants. She did not state well-pleaded factual allegations or offer evidence that Defendants have an office here, are registered debt collectors here, or otherwise routinely collect debts here.

7

provision.

### b. Due Process

In a specific personal jurisdiction case, a court must examine whether the plaintiff's claim arises out of or relates to at least one of the nonresident defendant's contacts with the forum state, whether the nonresident purposefully availed itself of the privilege of conducting activities in the forum state, and whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355. When the Court determines whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, the Court looks at (1) the defendant's burden in defending the case in the forum state, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in resolving disputes in the most efficient way, and (5) the shared interest of the states in furthering fundamental substantive social policies. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

Exercising personal jurisdiction over Defendants in this case does not offend due process. While one factor disfavors jurisdiction–because Defendants are Georgia residents, defending the case here will be more burdensome than defending the case there–other factors favor jurisdiction. Florida has an interest in resolving the dispute because the unfair communications harassed a Florida

resident and its own law indicates a desire to curb such practices in Florida. *See* Fla. Stat. §§ 559.55–559.785. Plaintiff, a Duval County resident (Doc. 8 at 1), has an interest in obtaining convenient and effective relief in Florida that may not be available if forced to sue Defendants in Georgia. Further,

> the states share an interest in preventing abuse by collectors. The purpose of the FDCPA articulated by the Senate Committee on Banking, Housing and Urban Affairs is that "[C]ollection abuse has grown from a state problem to a national problem . . . [Federal legislation is necessary because] State officials are unable to act against unscrupulous debt collectors who harass consumers from another state." 1977 U.S.Code Cong. & Ad. News 1695, 1697. Accordingly, if it becomes more difficult and costly for consumers to file suit, consumer protection within the states would be eroded.

*Gilmore v. Account Mgmt., Inc.*, No. 1:08-cv-1388-JOF-LTW, 2009 WL 2848278, at *4 (N.D. Ga. April 27, 2009), *adopted as modified*, 2009 WL 2848249, *rev'd on other grounds*, 357 F. App'x 218 (11th Cir. 2009). Accordingly, the Court finds that it has jurisdiction over Defendants in this case.

### B. Liability

The FDCPA imposes liability on "any debt collector who fails to comply with any provision of this [law]." 15 U.S.C. § 1692k. One such provision concerns the use of false representations in the collection of a debt. 15 U.S.C. § 1692e. Another such provision concerns conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with collection of a debt. 15 U.S.C. § 1692d. Pursuant to the FDCPA, a debt collector is "any person who

9

uses any instrumentality of commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Officers and directors of a "debt collector" may also be considered "debt collectors" regardless of whether they attempt to collect a debt under the auspices of a corporate entity so long as they "control and direct the debt collection practices." *See Arlozynski v. Rubin & Debski, P.A.*, 710 F. Supp. 2d 1308, 1310-11 (M.D. Fla. 2010).

Plaintiff's Second Amended Complaint allows the Court to draw the reasonable inference that Defendants are liable under the above cited provisions of the law. *See Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1244-45 (11th Cir. 2015). Plaintiff alleged that Defendant CRM is a business whose principle purpose is the collection of debts allegedly owed to third parties. (Doc. 8 at 2.) Further, Plaintiff alleges that CRM made false representations in collection of the debt, and that CRM engaged in multiple phone calls, the nature of which can reasonably be viewed as harassing, oppressing or abusive conduct. (*Id.* at 3-5.) With respect to Defendant McKenzie, Plaintiff adequately alleges that he controlled and directed the debt collection practices of CRM, including the content of the telephone messages. (*Id.* at 6-9); *see also Arlozynski*, 710 F. Supp. 2d at 1310.

## C. Damages

The FDCPA allows recovery of actual damages, statutory damages (capped at $1,000) regardless of provable actual damages, reasonable attorney fees, and costs. *See* 15 U.S.C. § 1692k(a)(2)(A) & 3.

### i. Actual Damages

"Under the FDCPA, actual damages include damages for emotional distress." *Titus v. Commercial Recovery Sys., Inc.*, No. 8:13-cv-567-T-27AEP, 2014 WL 55016, at *2 (M.D. Fla. Jan. 7, 2014) (citing *Minnifleld v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916 (11th Cir. 2011)). However, "[e]motional distress must have a *severe* impact on the sufferer to justify an award of actual damages." *Alecca v. AMG Managing Partners, LLC*, No. 3:13-cv-163-J-39PDB, 2014 WL 2987702, at *2 (M.D. Fla. July 2, 2014) (emphasis added) (citations omitted). "To find evidence of severe impact, courts look for medically significant physical symptoms of the underlying mental anguish, or a combination of genuine fear, humiliation, and anxiety." *Id.* Thus, "a number of courts have declined to award damages for emotional distress where the plaintiff's testimony was not supported by medical bills." *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197, 1211 (M.D. Fla. 2015) (collecting cases).

Here, other than stating that she was "frustrated" about the telephone calls and "starting to get scared and worried" about law enforcement coming to her house (Doc. 15-1), Plaintiff failed to supply any competent evidence of medically

11

significant physical symptoms, such as medical or treatment records, or of a combination of genuine fear, humiliation, and anxiety to support her claim for emotional distress. Indeed, courts in the Middle District of Florida have declined to award actual damages for emotional distress, "[w]here a plaintiff comes forth with only blanket statements and a list of symptoms."[3] *Lane v. Accredited Collection Agency Inc.*, No. 6:13-cv-530-Orl-18GJK, 2014 WL 1685677, at *8 (M.D. Fla. April 28, 2014). The undersigned finds that Plaintiff here provided no more than blanket statements and a list of symptoms in support of her claim for emotional distress and, as such, follows the line of cases declining to award damages for emotional distress where Plaintiff's testimony was unsupported by medically significant physical symptoms or a combination of genuine fear, humiliation, and anxiety. *See, e.g., Alecca*, 2014 WL 2987702 at *2 (holding that the plaintiff's embarrassment was not severe enough to obtain emotional distress damages); *Lane*, 2014 WL 1685677, at *8 (adopting a report and recommendation recommending no actual damages despite testimony that the plaintiff suffered nervousness, anxiety, and sleeplessness); *Titus*, 2014 WL 55016, at *3 (adopting report and recommendation recommending no actual damages despite explanation that the plaintiff suffered mental anguish from fear that her Social Security Income and Medicare benefits would be garnished);

---

[3] Notably, Plaintiff failed to reference in her brief any case within the Middle District of Florida (or the Eleventh Circuit) supporting her actual damages claim resulting from emotional distress. (Doc. 15 at 3-5.)

*Marchman v. Credit Solutions Corp.*, No. 6:10-cv-226-Orl-31, 2011 WL 1560647, at *10 (M.D. Fla. April 5, 2011) (awarding no actual damages where the plaintiff testified that she spent nights awake with worry and was withdrawn and depressed, but did not provide evidence that she required medical or professional services), *adopted by* 2011 WL 1557853 (M.D. Fla. April 25, 2011); *Montgomery v. Florida First Fin. Grp., Inc.*, No. 6:06-cv-1639-Orl-31KR, 2008 WL 3540374, at *9 (M.D. Fla. Aug. 12, 2008) (adopting a report and recommendation recommending no actual damages despite the defendant threatening six times, to plaintiff, plaintiff's daughter, and plaintiff's mother, that it would have plaintiff arrested, and despite the plaintiff's testimony that she was scared and struggled to sleep for fear that she would be arrested). Therefore, the undersigned recommends that Plaintiff not be awarded any actual damages.

      ii.     **Statutory Damages**

Plaintiff also seeks an award of statutory damages in the amount of $1,000.00 for the FDCPA violations. A court may award a maximum amount of $1,000.00 in statutory damages per action, rather than per violation, for violations brought under the FDCPA. 15 U.S.C. § 1692k(b)(1); *Harper v. Better Business Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992). In determining the amount of liability to impose upon a debt collector, the court should consider, among other relevant factors, the frequency and persistence of the noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such

13

noncompliance was intentional.  15 U.S.C. § 1692k(b)(1).

The undersigned recommends that Plaintiff be awarded the statutory maximum of $1,000.00 based on the factors listed above.  Plaintiff has adequately shown that CRM made multiple, persistent phone calls, starting in December 2015.  During this time period, CRM asked Plaintiff to reveal sensitive confidential information without disclosing its identity or the nature of the calls despite being requested to do so, told Plaintiff that she had committed a crime by not repaying her alleged debt, and threatened to show up (or have law enforcement show up) at Plaintiff's residential address.  These acts were intentional and violated the FDCPA.

### iii.  Attorney's Fees and Costs

A debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person in a successful action to enforce liability for a reasonable attorney's fee as determined by the Court.  15 U.S.C. § 1692k(a)(3).  The starting point for assessing reasonableness is a "lodestar" calculation, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A court should exclude hours that were "excessive, redundant, or otherwise unnecessary." *Id.* at 434.  The movant has the burden of producing evidence to support the hours worked and the rates claimed. *Id.* at 433.  Sufficient evidence is more than just an affidavit of the attorney who performed the work. *Norman v.*

*Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. The relevant legal community is where the case is filed. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The Court must then consider other relevant factors to determine whether to increase or decrease the fee, including the critical factor of "results obtained." *Hensley*, 461 U.S. at 434.

Here, Plaintiff seeks an award of $5,104.00 in fees and costs, representing 4.0 hours expended by attorney Larry Smith at an hourly rate of $450.00, 4.1 hours expended by attorney David Marco at an hourly rate of $385.00, 1.9 hours expended by attorney Thomas Gibbons at an hourly rate of $325.00, 4.6 hours expended by paralegal Nicole Dycha at an hourly rate of $130.00, as well as $510.00 for costs incurred for filing and serving the Complaint. In support of these figures, Plaintiff has submitted affidavits as to the attorneys' fees and costs, biographies providing information pertaining to the experience of the individuals named, the "Laffey Matrix" reflecting rates for civil attorneys and legal aids trying federal cases across the United States, and prior orders and judgments rendered from other jurisdictions. "While the Laffey Matrix indicates rates for civil attorneys trying federal cases in the United States, it does not necessarily reflect the prevailing market rates in Florida for the particular services performed in this

case." *Thomas v. Arm WNY, LLC*, No. 3:14-cv-360-J-39MCR, 2014 WL 6871654, at *8 (M.D. Fla. Dec. 3, 2014) (citing *Renniger v. Phillips & Cohen Assocs., Ltd.*, No. 8:10-cv-5-T-33EAJ, 2010 WL 3259417, at *2 (M.D. Fla. Aug. 18, 2010)). Similarly, orders and judgments from cases in jurisdictions located outside the Middle District of Florida do not reflect prevailing market rates in the relevant legal community. Accordingly, the Court will consider the rates deemed appropriate in the Middle District of Florida in similar cases brought under the FDCPA. *Barnes*, 168 F.3d at 437.

With respect to the proposed hourly rates of the attorneys in this case, the undersigned recommends a reduction to more closely resemble the amounts awarded to attorneys in similar cases within the Middle District of Florida.[4] Attorney Smith has been a licensed attorney in the State of Illinois since 1993. (Doc. 15-4 at 2.) He is the managing partner at SmithMarco, P.C. and has extensive background in handling matters brought under the FDCPA. (*Id.* at 2, 10.) Attorney Marco has been a licensed attorney in the State of Illinois since 2000. (*Id.* at 4.) He is a partner at SmithMarco, P.A. and has extensive background in handling matters brought under the FDCPA. (*Id.* at 4, 10.) Attorney Gibbons has been a licensed attorney in the State of Florida (including the Middle District of Florida) since 2001, although he has been practicing law

---

[4] With respect to the amounts of time spent performing various tasks in preparing this case (as opposed to the hourly rates), the undersigned finds the amounts provided are not unreasonable, excessive, redundant or duplicative.

16

since 1992.  (*Id.* at 6, 11.)  He appears to be a sole practitioner with extensive background in handling matters brought under the FDCPA.  (*Id.* at 11.)

While Plaintiff seeks an award of attorneys' fees representing an hourly rate of $450.00 on behalf of Mr. Smith and $385.00 on behalf of Mr. Marco, a review of similar cases within the Middle District of Florida shows these rates to be excessive.  *See, e.g., Smith v. Royal Oak Financial Servs., Inc.*, No. 3:11-cv-542-J-34JRK, 2012 WL 3290153, at *6 (M.D. Fla. June 18, 2012) (acknowledging that "[a] review of the case law from this District reflects that a reasonable hourly rate for an attorney ranges from $125 to $338" and collecting cases), *adopted by*, 2012 WL 3290151 (M.D. Fla. Aug. 13, 2012).  The undersigned finds that Mr. Gibbons' hourly rate of $325.00 comports with the hourly rates typically awarded in cases involving FDCPA claims in the Middle District of Florida and, thus, is reasonable.  *See, e.g., Hepsen v. J.C. Christensen & Assocs., Inc.*, 394 F. App'x 597, 600 (11th Cir. 2010) (per curiam) (finding that a magistrate judge in the Middle District of Florida did not abuse her discretion in setting the reasonable hourly rate at $300 in a case involving claims under the FDCPA); *Titus*, 2014 WL 55016, at *4 (finding that attorney's hourly rate of $350 in FDCPA case was reasonable); *Montgomery*, 2008 WL 3540374, at *13-14 (same); *see also Sharke v. Midnight Velvet, Inc.*, No. 8:12-cv-589-T-24AEP, 2013 WL 247786, at *2-3 (M.D. Fla. June 7, 2013) (finding $300.00 to be a reasonable hourly rate for a managing partner).  As such, the undersigned recommends reducing Mr. Smith's

hourly rate from $450.00 to $325.00 and Mr. Marco's hourly rate from $385.00 to $325.00, to bring them in line with Mr. Gibbons' hourly rate. Attorneys Smith, Marco, and Gibbons all have extensive experience as attorneys, as well as handling FDCPA claims in particular.

Plaintiff seeks an award representing an hourly rate of $130.00 with respect to Ms. Dycha. However, the courts within the Middle District of Florida "have consistently held a reasonable hourly rate for the work of paralegals and law clerks in cases involving violations of the FDCPA to be around $95 to $100." *Thomas*, 2014 WL 6871654, at *9 (collecting cases). Therefore, the undersigned recommends an hourly rate of $100.00 with respect to the work of Ms. Dycha.

With respect to costs, Plaintiff seeks an award of $400.00, representing the filing fee associated with this case, and $110.00, representing the cost of service in this case. (Doc. 15 at 8.) Because these costs are recoverable under 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1920, and Defendants have filed no objection, the undersigned recommends that these cost be allowed.

Accordingly, it is respectfully **RECOMMENDED:**

1. The Motion (**Doc. 15**) be **GRANTED in part and DENIED in part**, to the extent Plaintiff be awarded $1,000.00 in statutory damages, $3,710.00 in attorneys' fees, and $510.00 in costs, for a total amount of $5,220.00, and denied in all other respects.

2. The Clerk of Court be **DIRECTED** to enter judgment in favor or

Plaintiff, Tawanda Johnson, and against Defendants, Critical Resolution Mediation LLC and Brian McKenzie, terminate any pending motions, and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on April 24, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record